## IN THE UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>SERVICE ONE, LLC<br><br>Debtor | CASE NO. 22-40503<br>CHAPTER 11<br>(Subchapter V) |
| MARK A. WEISBART, SUBV CHAPTER 11 TRUSTEE OF SERVICE ONE, LLC<br><br>PLAINTIFF<br><br>V.<br><br>TRASH CHOMPER, LLC<br><br>DEFENDANT | Adversary No. 22-04045 |

## DECLARATION OF MARK A. WEISBART

I, Mark. A. Weisbart, declare as follows:

1.      "I am over eighteen (18) years of age and if called upon I would competently testify to the matters set forth herein from my own personal knowledge.

2.      I am the duly appointed and acting SubV Chapter 11 trustee for the bankruptcy estate of Service One, LLC.   In that capacity I have personal knowledge of the facts stated herein.

3.      On April 21, 2022 (the "Petition Date"), a voluntary petition under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") was filed on behalf of Service One, LLC (the "Debtor") commencing the above-referenced bankruptcy case (the "Bankruptcy Case").[1] Per its designation on its Petition, the Debtor is proceeding under Subchapter V of Chapter 11 in accordance with section 1182 of the Bankruptcy Code (the "SubV Designation").

---

[1] The voluntary petition included a copy of the Debtor's "U.S. Income Tax Return for an S Corporation for 2020," Form 1120-S (the "2020 Return").

4.      Thereafter, I was appointed the Subchapter V Chapter 11 Trustee for this case pursuant to section 1183 of the Bankruptcy Code.

5.      Due to disputes between the Debtor's two members, Sandra Perry and Charles Tomasello, each of whom own a 50% membership interest in the Debtor, on April 25, 2022, the Debtor filed its *Motion to Remove the Debtor from Possession and Authorize Subchapter V Trustee to Operate the Business of the Debtor* (the "Removal Motion") seeking to be removed as a debtor in possession pursuant to section 1185 of the Bankruptcy Code and requesting that the Trustee be authorized to manage and operate the Debtor's business pursuant to section 1183(b)(5).

6.      By Order entered on April 29, 2022, the Court granted the Removal Motion and vested me with authority to operate the Debtor's business and manage its assets in accordance with 11 U.S.C. § 1183(b)(5).

7.      On May 18, 2022, Schedules A/B, D, E/F, G and H [Doc 77] (the "Schedules) and a Statement of Financial Affairs [Doc 78] ("SOFA") were filed on behalf of the Debtor.[2]

8.      The Debtor was formed in October 2018.   Perry was its original sole member and Charles A. Tomasello ("Tomasello") its manager. Through an Amended and Restated Company Agreement of Service One, LLC dated April 1, 2019, Tomasello was named an equal member and Perry was appointed co-manager.

9.      The Debtor's principal business has been the remodeling and renovation of single-family homes for clients operating in the "single family rental space."

10.     The Debtor's bankruptcy was precipitated by a fallout between Perry and Tomasello which culminated in a state court lawsuit and the freezing of the Debtor's bank account by PlainsCapital Bank.

---

[2] The Declarations filed with the Schedules and SOFA were signed by Perry as the Debtor's managing member.

11.     In addition to their association in the Debtor, Perry and Tomasello hold interests in and jointly manage other businesses, including TCLLC which was formed in August 2020. Upon information and belief, after its formation Peter Nicklas ("Nicklas") was subsequently added as a member in and manager of TCLLC.   TCLLC operates a trash bin rental and waste removal business primarily focused in the residential construction sector.

12.     From August 2020 through mid-April 2022 the Debtor paid or advanced funds for many of TCLLC's operational expenses, including, without limitation, salaries, insurance, software, hired services and telephone, internet and communications charges. Also, during this period the Debtor periodically transferred funds into TCLLC's bank account (and certain TCLLC debts and expenses were paid by preauthorized debits from the Debtor's bank account.   Further, for most of this period, if not all, TCLLC's business operated from the Debtor's principal office.

13.     As TCLLC initially lacked sufficient and adequate funds and capital to acquire equipment to commence its operations, in August and November 2020 the Debtor purchased the Equipment – being nine (9) 14-yard dumpsters and two (2) goose neck hauler various trash bins, from Nationwide Trailers FTW.   The Debtor, in turn, leased the Equipment to TCLLC for use in its business operations. These lease arrangements were documented and are evidenced by two equipment leases (the "Leases"); the first being that certain Equipment Lease Agreement dated August 12, 2020 (the "August Lease"),[3] under which the Debtor, as lessor, leased to TCLLC, as lessee, three (3) 14-yard dumpsters and one (1) goose neck hauler (the "August Equipment") for the period September 1, 2002, through July 1, 2022, and the second being that certain Equipment Lease Agreement dated November 1, 2020 (the "November Lease"),[4] under which the Debtor, as

---

[3] A true and correct copy of the August Lease is attached hereto as **Exhibit "1,"** and is incorporated herein.

[4] A true and correct copy of the November Lease is attached hereto as **Exhibit "2,"** and is incorporated herein.

lessor, leased to TCLLC, as lessee, six (6) 14-yard dumpsters and One (1) goose neck hauler (the "November Equipment") for the period October 1, 2002, through October 21, 2024.[5]

14.     In consideration for the rental and use of the August Equipment and November Equipment TCLLC agreed under the Leases, *inter alia*, to pay the Debtor, respectively, monthly rental amounts of $1,082.69 and $934.04 (the "Rent"). Under the Leases TCLLC also agreed to (i) surrender and deliver to the Debtor the August Equipment upon expiration of the Leases' respective terms,[6] and (ii) maintain insurance on the Equipment with Debtor as the loss payee.[7] In addition, Leases expressly provided that "[t]he] Equipment is and shall remain the exclusive property of [the Debtor]."[8]

15.     Other than the difference in the monthly rental fee and the term periods the Leases contains the same substantive terms and provisions.

16.     TCLLC is in default under the Leases, having failed to (1) pay the Debtor Rent due under both Leases since August 2021, (2) continually maintain insurance on the Equipment, and (3) surrender and deliver the August Equipment to the Debtor since the expiration of the August Lease.

---

[5] Both the August Lease and the November Lease were executed by Perry on behalf of the Debtor and by Tomasello on behalf of TCLLC.

[6] *See* Exhibits 1 and 2, ¶ 8 ("**POSSESSION AND SURRENDER OF EQUIPMENT:** [ ] At the expiration of the Lease Term, Lessee shall surrender the Equipment to Lessor by delivering the Equipment to Lessor or Lessor's agent in good condition and working order, ordinary wear and tear excepted, as it was at the commencement of the Agreement.

[7] *See* Exhibits 1 and 2, ¶ 12 ("**INSURANCE:** Lessee shall be responsible to maintain on the Equipment with losses payable to Lessor against fire, theft, collision, and other risks as are appropriate and specified by Lessor.")

[8] *See* Exhibits 1 and 2, ¶ 15 ("**OWNERSHIP:** The Equipment is and shall remain the exclusive property of Lessor.")

17.     The Debtor failed to list the Equipment on its Schedule A/B, and, when questioned at the scheduled Section 341 Meeting of Creditors on May 20, 2022, Perry testified that the Debtor did not own any dumpsters and haulers. Nevertheless, the Equipment constitutes property of the Debtor's estate pursuant to 541(a) of the Bankruptcy Code. The Debtor purchased the Equipment and TCLLC agreed pursuant to the Leases that the Equipment was and would remain the property of the Debtor.[9]

18.     On or around June 13, 2022, I received information that the Debtor owned the Equipment. As the Equipment was not scheduled, on June 14, 2022, I made a request to Debtor's counsel for an explanation about the ownership of the Equipment and provided him copies of the Leases for his review.

19.     In response, I received late on June 14, 2022, an email from Perry claiming that the Equipment was owned by TCLLC and the subject of her liens.[10] No other information or documents supporting Perry's assertions, however, were provided.

20.     Despite subsequent requests to Perry's counsel, as of the filing of the Complaint in this proceeding, neither Perry or her counsel had provided me or my counsel any document or information substantiating her claim that the Equipment is owned by TCLLC or that they are subject to liens for her benefit.

21.     On July 26, 2022, my counsel delivered to Perry, Tomasello, Nicklas, along with Perry's and Tomasello's counsel, a demand letter (the "Demand Letter") demanding TCLLC's return of the August Leased Equipment and declaring a default under both Leases for TCLLC's failure to pay Rent and to maintain the requisite insurance on the Equipment (the "Lease

---

[9]  In addition, the Equipment is identified as assets of the Debtor on schedules to the 2020 Return.

[10] Schedule D of the Schedules does not reflect Perry as a secured creditor of the Debtor.

Defaults").[11] As the Leases required, TCLLC was provided seven (7) days from the date of Demand Letter for TCLLC to surrender the August Leased Equipment and to cure the identified Lease Defaults.

22.     On August 2, 2022, my office received a response to the Demand Letter from Tomasello's counsel stating that (i) TCLLC and Tomasello did not oppose the demand for return of the Equipment, (ii) Tomasello was aware that customers of TCLLC have continued to pay TCLLC for services but due to his lack of access to TCLLC's frozen bank accounts he does not have ability to cure the identified "Payment Defaults," and (iii) that insurance for the Equipment had been cancelled and that despite Tomasello's request for proof of new insurance, Niklas had refused to provide him any such proof.[12]

23.     As of the filing of the Complaint herein there had been no response from Perry or her counsel to the Demand Letter.

24.     As of the Petition Date, the Debtor owned and held title to the Equipment.

25.     The Equipment constitutes property of the Debtor's bankruptcy estate pursuant to Section 541(a) of the Bankruptcy Code. As such, pursuant to Section 363(b) of the Bankruptcy Code the Equipment represents property of the Debtor's bankruptcy estate that I, as trustee, may use.

26.     The Equipment is in the possession and control of TCLLC.   Pursuant to the August Lease, upon its expiration, TCLLC was obligated to deliver and surrender the August Leased Equipment to the Debtor.   TCLLC is in default of this obligation.

27.     Despite expiration of the August Lease and demand by Plaintiff to TCLLC's

---

[11]   A true and correct copy of the Demand Letter is attached hereto as **Exhibit "3,"** and incorporated herein.

[12] A true and correct copy of Tomasello's response is attached hereto as **Exhibit "4,"** and incorporated herein.

**DECLARATION OF MARK A. WEISBART – Page  6**

managers, TCLLC has continued to withhold the August Leased Equipment from Plaintiff and refuses to deliver and surrender same to Plaintiff.

28.    Further, based on the Leased Defaults TCLLC is in default of both Leases and both Leases have terminated.   Thus, TCLLC has no right or interest in or to the Equipment.

29.    TCLLC has exercised control over the Equipment to the exclusion of the Debtor's bankruptcy estate.

30.    Through this exercise of control over the Equipment, TCLLC has willfully and intentionally violated the automatic stay of Section 362(a)(3) of the Bankruptcy Code.

31.    TCLLC continues to use the Equipment in its business operations. In continuing to use the Equipment, TCLLC is generating additional revenue and income for its business.

32.    TCLLC's use of the Equipment creates significant harm and risk to the Debtor's bankruptcy estate as the estate is unable to maximize the Equipment's value for the benefit of its creditors and such use poses substantial risk of liability in the event of an injury in the use or transportation of the Equipment.

33.    Absent immediate injunctive relief, the Debtor's bankruptcy estate will suffer immediate and irreparable harm and injury given TCLLC's continued use of the Equipment in its business operations and its failure to maintain insurance to cover damage to the Equipment and protect against any injuries or damages arising from its use.

34.    The issuance of a temporary restraining order is necessary to preserve the *status quo* pending the Court's consideration of Plaintiff's request for entry of a preliminary injunction.

35.    The issuance of a temporary restraining order is necessary to prevent immediate and irreparable injury to the Debtor's bankruptcy estate. This harm to the estate is imminent as TCLLC and the TLLC Agents presently possess, control and maintain custody of the Equipment

and TCLLC continues to use and operate the Equipment in its business operations. TCLLC's use of the Equipment creates a substantial, immediate and irreparable threat of a loss to the Debtor's bankruptcy estate. TCLLC's continued use of Equipment diminishes the value of the Equipment, creates a risk of liability for the Debtor's estate and threatens the ability of Plaintiff to maximize the Equipment's value for the benefit of the Debtor's creditors.

36.     In the event of an accident involving the Equipment the Debtor's bankruptcy estate will suffer a property loss, i.e., the value of and future use of the Equipment, and potential liability for any injury or harm to third parties and their property.

37.     Any damage or destruction of the Equipment would diminish or eliminate any value Plaintiff could recognize in its sale. Further, there is a substantial and real threat that demand for the Equipment is waning. As well documented, the home construction sector is experiencing a slow-down and nearing a recession due to the rise of mortgage rates, a decrease in buying activity and home starts. This slowdown has further caused a pull-back in residential restoration and renovation projects.

38.     Further, in having unfettered use, possession and control of the Equipment, TCLLC has the ability to operate, sell, alter, transfer or otherwise dispose of the Equipment to the detriment of the Debtor's bankruptcy estate. Any sale, transfer, alteration or disposition could be made for the purpose of converting property of the bankruptcy estate or circumventing any judgment eventually obtained by Plaintiff, thereby diminishing the value of such property for the benefit of the estate's creditors.

39.     The bankruptcy estate would suffer irreparable injury and harm in the event of sale, transfer, alteration or disposition of the Equipment.

40.     The injury and harm faced by the bankruptcy estate in the event injunctive relief is

not granted is (i) the diminished value of the Equipment, (ii) reduced market for sale of the Equipment, and (iii) potential liability for injury or damages caused to third parties.

41.    On the other hand, TCLLC and the TCLLC's Agents have little risk of injury or damage if enjoined from using, operating, utilizing, selling, transporting, transferring, altering or destroying the Equipment.    Since the August Lease expired and the Leases have been terminated, TCLLC has no legal right to possess or use the Equipment. Consequently, TCLLC cannot rely on the use of the Equipment in its business operation, nor does it have a reasonable expectation of any such rights.

42.    There is a substantial likelihood that the Debtor's bankruptcy estate will succeed on the merits of this action. TCLLC's sole basis for possession, custody and control of the Equipment arises under the Leases.    The August Lease expired under its terms and due to the Lease Defaults TCLLC's the Leases have terminated.    Upon termination of the Leases TCLLC is obligated to return and surrender the Equipment.    As the Equipment constitutes property of the bankruptcy estate, TCLLC is obligated to turnover possession, custody and control of that property to Plaintiff pursuant to 11 U.S.C. § 542(a).    These circumstances, in addition to the other facts alleged herein, clearly evidence Plaintiff's likelihood of success on the merits of the complaint.

43.    The issuance of a temporary restraining order would not adversely affect public policy or the public interest, but rather granting this relief would serve to enhance the public interest and public policy.    First, it will protect the Debtor's bankruptcy estate from a substantial and irreparable injury to the Equipment or third parties who might seek recovery against the estate in the event of an accident. Second, it will protect and preserve the bankruptcy estate's rights and interest in the Equipment in accordance with Section 363 of the Bankruptcy Code.    Third, it would preserve the integrity of the Bankruptcy Code and bankruptcy process by preserving the

value of estate property and further the expeditious administration of the bankruptcy estate. Fourth, it would enhance enforcement of the automatic stay of Section 362(a) to ensure no party exercises control or possession of estate property.   Finally, it preserves the important public policy that the bankruptcy trustee is the sole representative of the bankruptcy estate and that no third party has the authority, right, standing or power to assert control over property of the estate.

44.   The Debtor's bankruptcy estate does not have an adequate remedy at law.   While the bankruptcy estate could obtain a judgment against TCLLC any such judgment would likely remain unsatisfied and uncollectible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of August 2022.

_____
Mark A. Weisbart

# EXHIBIT 1

# Equipment Lease Agreement

This Equipment Lease Agreement (the "Agreement") is made and entered on August 12, 2020, by and between Service One, LLC ("Lessor") and Trash Chomper, LLC ("Lessee") (collectively referred to as the "Parties").

The Parties agree as follows:

**1. EQUIPMENT:** Lessor hereby leases to Lessee the following equipment:
3 14 Yard dumpster and 1 goose neck hauler

(the "Equipment").

**2. LEASE TERM:**  The lease will start on September 1, 2020 (begin date) and will end on July 1st, 2022 (end date) (Lease Term).

**3. LEASE PAYMENTS:** Lessee agrees to pay to Lessor as rent for the Equipment the amount of $ 1082.69 ("Rent") each month in advance on the first day of each month at: 4801 Keller Springs Rd., Addison, TX 75001 (address for rent payment) or at any other address designated by Lessor. If the Lease Term does not start on the first day of the month or end on the last day of a month, the rent will be prorated accordingly.

**4. LATE CHARGES:** If any amount under this Agreement is more than 30 days late, Lessee agrees to pay a late fee of $ 25.00 .

**5. SECURITY DEPOSIT**: Prior to taking possession of the Equipment, Lessee shall deposit with Lessor, in trust, a security deposit of $ 0.00 as security for the performance by Lessee of the terms under this Agreement and for any damages caused by Lessee or Lessee's agents to the Equipment during the Lease Term. Lessor may use part or all of the security deposit to repair any damage to Equipment caused by Lessee or Lessee's agents. However, Lessor is not just limited to the security deposit amount and Lessee remains liable for any balance. Lessee shall not apply or deduct any portion of any security deposit from the last or any month's rent. Lessee shall not use or apply any such security deposit at any time in lieu of payment of rent. If Lessee breaches any terms or conditions of this Agreement, Lessee shall forfeit any deposit, as permitted by law.

**6. DELIVERY:** Lessee [ ] shall or [X] shall not *[choose one]* be responsible for all expenses and costs: i) at the beginning of the Lease Term, of shipping the Equipment to

EXHIBIT 1

Lessee's premises and ii) at the end of the Lease Term, of shipping the Equipment back to Lessor's premises.

**7. DEFAULTS:** If Lessee fails to perform or fulfill any obligation under this Agreement, Lessee shall be in default of this Agreement. Subject to any statute, ordinance or law to the contrary, Lessee shall have seven (7) days from the date of notice of default by Lessor to cure the default. In the event Lessee does not cure a default, Lessor may at Lessor's option (a) cure such default and the cost of such action may be added to Lessee's financial obligations under this Agreement; or (b) declare Lessee in default of the Agreement. If Lessee shall become insolvent, cease to do business as a going concern or if a petition has been filed by or against Lessee under the Bankruptcy Act or similar federal or state statute, Lessor may immediately declare Lessee in default of this Agreement. In the event of default, Lessor may, as permitted by law, re-take possession of the Equipment. Lessor may, at its option, hold Lessee liable for any difference between the Rent that would have been payable under this Agreement during the balance of the unexpired term and any rent paid by any successive lessee if the Equipment is re-let minus the cost and expenses of such reletting. In the event Lessor is unable to re-let the Equipment during any remaining term of this Agreement, after default by Lessee, Lessor may at its option hold Lessee liable for the balance of the unpaid rent under this Agreement if this Agreement had continued in force.

**8. POSSESSION AND SURRENDER OF EQUIPMENT:** Lessee shall be entitled to possession of the Equipment on the first day of the Lease Term. At the expiration of the Lease Term, Lessee shall surrender the Equipment to Lessor by delivering the Equipment to Lessor or Lessor's agent in good condition and working order, ordinary wear and tear excepted, as it was at the commencement of the Agreement.

**9. USE OF EQUIPMENT:** Lessee shall only use the Equipment in a careful and proper manner and will comply with all laws, rules, ordinances, statutes and orders regarding the use, maintenance of storage of the Equipment.

**10. CONDITION OF EQUIPMENT AND REPAIR:** Lessee or Lessee's agent has inspected the Equipment and acknowledges that the Equipment is in good and acceptable condition.

**11. MAINTENANCE, DAMAGE AND LOSS:** Lessee will, at Lessee's sole expense, keep and maintain the Equipment clean and in good working order and repair during the Lease Term. In the event the Equipment is lost or damaged beyond repair, Lessee shall pay to Lessor the replacement cost of the Equipment; in addition, the obligations of this Agreement shall continue in full force and effect through the Lease Term.

**12. INSURANCE:** Lessee shall be responsible to maintain insurance on the Equipment with losses payable to Lessor against fire, theft, collision, and other such risks as are appropriate and specified by Lessor. Upon request by Lessor, Lessee shall provide proof of such insurance.

**13. ENCUMBRANCES, TAXES AND OTHER LAWS:** Lessee shall keep the Equipment free and clear of any liens or other encumbrances and shall not permit any act where Lessor's title or rights may be negatively affected. Lessee shall be responsible for complying with and conforming to all laws and regulations relating to the possession, use or maintenance of the Equipment. Furthermore, Lessee shall promptly pay all taxes, fees, licenses and governmental charges, together with any penalties or interest thereon, relating to the possession, use or maintenance of the Equipment.

**14. LESSORS REPRESENTATIONS:** Lessor represents and warrants that he/she has the right to lease the Equipment as provided in this Agreement and that Lessee shall be entitled to quietly hold and possess the Equipment, and Lessor will not interfere with that right as long as Lessee pays the Rent in a timely manner and performs all other obligations under this Agreement.

**15. OWNERSHIP:** The Equipment is and shall remain the exclusive property of Lessor.

**16. SEVERABILITY:** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

**17. ASSIGNMENT:** Neither this Agreement nor Lessee's rights hereunder are assignable except with Lessor's prior, written consent.

**18. BINDING EFFECT:** The covenants and conditions contained in the Agreement shall apply to and bind the Parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

**19. GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**20. NOTICE:** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service to:

Lessor:                                         Lessee:

Service One, LLC                                Trash Chomper, LLC
4801 Keller Springs Rd                          4801 Keller Springs Rd.
Addison, TX  75001                              Addison, TX  75001


Either party may change such addresses from time to time by providing notice as set forth above.

**21. ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both Lessor and Lessee.

**22. CUMULATIVE RIGHTS:** Lessor's and Lessee's rights under this Agreement are cumulative and shall not be construed as exclusive of each other unless otherwise required by law.

**23. WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement. The acceptance of rent by Lessor does not waive Lessor's right to enforce any provisions of this Agreement.

**24. INDEMNIFICATION:** Except for damages, claims or losses due to Lessor's acts or negligence, Lessee, to the extent permitted by law, will indemnify and hold Lessor and Lessor's property, free and harmless from any liability for losses, claims, injury to or death of any person, including Lessee, or for damage to property arising from Lessee using and possessing the Equipment or from the acts or omissions of any person or persons, including Lessee, using or possessing the Equipment with Lessee's express or implied consent.

**25. ADDITIONAL TERMS & CONDITIONS** (Specify "none" if there are no additional provisions)
None
_____
_____
_____
_____
_____
_____
_____
_____

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

**LESSOR:**

_Sandra Perry_

**Sandra Perry**

(Name)

_____

(Position, if applicable)

**LESSEE:**

_Charles Tomasello_

**Charles Tomasello**

(Name)

(Position, if applicable)

_Peter L. Nickles III_          11/6/2020

_Witness_

# NationWide Trailers,LLC

**Buyers Order**

*JACOB GRANHOLD*
2850 E Loop 820 S
Ft. Worth,TX 76119
Phone (817) 457-3535  Fax (817) 457-3545

DATE:
8/11/2020

EMAIL:

Bill To:

Ship To:    pick up

| SALESPERSON | P.O. NUMBER | ORDER NO | SHIP DATE | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| JACOB | | | | | |

| QUANTITY | DESCRIPTION | | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| | Make-PJ Trailers | | | |
| | **UPGRADES IN BOLD PRINT** | | | |
| 1.00 | 14' Rollster Gooseneck Trailer | | $9,800.00 | $9,800.00 |
| | 2-7,000lb Axles with elec Brakes | | incl | |
| | 16" Wheels w/235/80R16 Radial Tires | | incl | |
| | **235/85/16 14 PLY TIRE UPGRADE** | | $575.00 | $575.00 |
| | **PULL OVER TARP INSTALLED ON GN ROLL-OFF** | | $850.00 | $850.00 |
| | 18,000lb Winch w/Dual Batteries | | incl | |
| | Front Tool Box | | incl | |
| | 6 Leaf Slipper Spring Suspension | | incl | |
| | 3" Inframe Greaseable Rollers | | incl | |
| | Electric Breakaway Kit w/ Charger | | incl | |
| | 45° Dump Pitch | | incl | |
| | 12VDC Hydraulic Pump | | incl | |
| | 5" x 21" Hydraulic Cylinder w/Scissor Lift | | incl | |
| | 12' Control Cable | | incl | |
| | 6" Channel Main Frame | | incl | |
| | DOT Approved Flushmount Lifetime LED Lights | | incl | |
| | Sealed Bargman Wire Harness w/ 7-Way RV Plug | | incl | |
| | Sand Blasted, Acid Washed, Powder Coated | | incl | |
| | G.V.W.R 15,680lbs | | | |
| 3.00 | 14' 14yd Dumpsters    Tax Included | | $3,500.00 | $10,500.00 |
| | 3 Years factory warranty | | | |

| | | |
|---|---|---|
| SUBTOTAL | | $21,725.00 |
| Parts | | |
| Trailer Tax 6.25% | $ | 612.50 |
| Title | $ | 36.75 |
| Doc | $ | 110.00 |
| Registration | $ | 122.50 |
| Temp Tag | $ | 5.00 |
| State Inspection | $ | 7.50 |
| TOTAL | | $22,619.25 |
| Downpayment | | |
| Remaining Balance | | |

Buyer_____

Seller_____

PRICES QUOTED ARE A CASH/CHECK PRICE.
Please make all checks payable to NationWide Trailers.
Call Jacob Granhold for info on this buyers order / quote
ALL DEPOSITS ON SPECIAL ORDERS ARE NON REFUNDABLE
**THANK YOU FOR YOUR BUSINESS!**

# EXHIBIT 1

*Trash Chomper*

# Loan Amortization Schedule

*LEASE #1 –*

*Salmpows / quick look trailer*

*Payback to plains*



## Enter Values

| | |
|---|---|
| Loan amount | $23,000.00 |
| Annual interest rate | 12.00% |
| Loan period in years | 2 |
| Number of payments per year | 12 |
| Start date of loan | 9/1/2020 |

Optional extra payments

## Loan Summary

| | |
|---|---|
| Scheduled payment | $1,082.69 |
| Scheduled number of payments | 24 |
| Actual number of payments | 24 |
| Total early payments | $0.00 |
| Total interest | $2,984.56 |

Lender name    Sandra Perry

| Payment Number | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 9/1/2020 | $23,000.00 | $1,082.69 | $0.00 | $1,082.69 | $852.69 | $230.00 | $22,147.31 | $230.00 |
| 2 | 10/1/2020 | $22,147.31 | $1,082.69 | $0.00 | $1,082.69 | $861.22 | $221.47 | $21,286.09 | $451.47 |
| 3 | 11/1/2020 | $21,286.09 | $1,082.69 | $0.00 | $1,082.69 | $869.83 | $212.86 | $20,416.26 | $664.33 |
| 4 | 12/1/2020 | $20,416.26 | $1,082.69 | $0.00 | $1,082.69 | $878.53 | $204.16 | $19,537.74 | $868.50 |
| 5 | 1/1/2021 | $19,537.74 | $1,082.69 | $0.00 | $1,082.69 | $887.31 | $195.38 | $18,650.42 | $1,063.87 |
| 6 | 2/1/2021 | $18,650.42 | $1,082.69 | $0.00 | $1,082.69 | $896.19 | $186.50 | $17,754.24 | $1,250.38 |
| 7 | 3/1/2021 | $17,754.24 | $1,082.69 | $0.00 | $1,082.69 | $905.15 | $177.54 | $16,849.09 | $1,427.92 |
| 8 | 4/1/2021 | $16,849.09 | $1,082.69 | $0.00 | $1,082.69 | $914.20 | $168.49 | $15,934.89 | $1,596.41 |
| 9 | 5/1/2021 | $15,934.89 | $1,082.69 | $0.00 | $1,082.69 | $923.34 | $159.35 | $15,011.55 | $1,755.76 |
| 10 | 6/1/2021 | $15,011.55 | $1,082.69 | $0.00 | $1,082.69 | $932.57 | $150.12 | $14,078.98 | $1,905.88 |
| 11 | 7/1/2021 | $14,078.98 | $1,082.69 | $0.00 | $1,082.69 | $941.90 | $140.79 | $13,137.08 | $2,046.67 |
| 12 | 8/1/2021 | $13,137.08 | $1,082.69 | $0.00 | $1,082.69 | $951.32 | $131.37 | $12,185.76 | $2,178.04 |
| 13 | 9/1/2021 | $12,185.76 | $1,082.69 | $0.00 | $1,082.69 | $960.83 | $121.86 | $11,224.93 | $2,299.89 |
| 14 | 10/1/2021 | $11,224.93 | $1,082.69 | $0.00 | $1,082.69 | $970.44 | $112.25 | $10,254.49 | $2,412.14 |
| 15 | 11/1/2021 | $10,254.49 | $1,082.69 | $0.00 | $1,082.69 | $980.15 | $102.54 | $9,274.34 | $2,514.69 |
| 16 | 12/1/2021 | $9,274.34 | $1,082.69 | $0.00 | $1,082.69 | $989.95 | $92.74 | $8,284.39 | $2,607.43 |
| 17 | 1/1/2022 | $8,284.39 | $1,082.69 | $0.00 | $1,082.69 | $999.85 | $82.84 | $7,284.55 | $2,690.28 |
| 18 | 2/1/2022 | $7,284.55 | $1,082.69 | $0.00 | $1,082.69 | $1,009.84 | $72.85 | $6,274.70 | $2,763.12 |
| 19 | 3/1/2022 | $6,274.70 | $1,082.69 | $0.00 | $1,082.69 | $1,019.94 | $62.75 | $5,254.76 | $2,825.87 |
| 20 | 4/1/2022 | $5,254.76 | $1,082.69 | $0.00 | $1,082.69 | $1,030.14 | $52.55 | $4,224.62 | $2,878.42 |
| 21 | 5/1/2022 | $4,224.62 | $1,082.69 | $0.00 | $1,082.69 | $1,040.44 | $42.25 | $3,184.17 | $2,920.66 |
| 22 | 6/1/2022 | $3,184.17 | $1,082.69 | $0.00 | $1,082.69 | $1,050.85 | $31.84 | $2,133.33 | $2,952.50 |
| 23 | 7/1/2022 | $2,133.33 | $1,082.69 | $0.00 | $1,082.69 | $1,061.36 | $21.33 | $1,071.97 | $2,973.84 |
| 24 | 8/1/2022 | $1,071.97 | $1,082.69 | $0.00 | $1,071.97 | $1,061.25 | $10.72 | $50.00 | $2,984.56 |

EXHIBIT 1

# EXHIBIT 2

# Equipment Lease Agreement

This Equipment Lease Agreement (the "Agreement") is made and entered on
November 1, 2020, by and between Service One, LLC ("Lessor") and
Trash Chomper, LLC ("Lessee") (collectively referred to as the "Parties").

The Parties agree as follows:

**1. EQUIPMENT:** Lessor hereby leases to Lessee the following equipment:
6 – 14-yard Dumpsters & Goose Neck Hauler

(the "Equipment").

**2. LEASE TERM:**  The lease will start on October 1st, 2020 (begin date) and will end on
October 31st, 2024 (end date) (Lease Term).

**3. LEASE PAYMENTS:** Lessee agrees to pay to Lessor as rent for the Equipment the
amount of $ 935.04 ("Rent") each month in advance on the first day of each month at:
4801 Keller Springs Rd., Addison, TX 75001 (address for rent payment) or at any other
address designated by Lessor. If the Lease Term does not start on the first day of the month
or end on the last day of a month, the rent will be prorated accordingly.

**4. LATE CHARGES:** If any amount under this Agreement is more than 30 days
late, Lessee agrees to pay a late fee of $ 25.00 .

**5. SECURITY DEPOSIT**: Prior to taking possession of the Equipment, Lessee shall
deposit with Lessor, in trust, a security deposit of $ 0.00 as security for the
performance by Lessee of the terms under this Agreement and for any damages caused by
Lessee or Lessee's agents to the Equipment during the Lease Term. Lessor may use part
or all of the security deposit to repair any damage to Equipment caused by Lessee or
Lessee's agents. However, Lessor is not just limited to the security deposit amount and
Lessee remains liable for any balance. Lessee shall not apply or deduct any portion of any
security deposit from the last or any month's rent. Lessee shall not use or apply any such
security deposit at any time in lieu of payment of rent. If Lessee breaches any terms or
conditions of this Agreement, Lessee shall forfeit any deposit, as permitted by law.

**6. DELIVERY:** Lessee [_] shall or [X] shall not *[choose one]* be responsible for all
expenses and costs: i) at the beginning of the Lease Term, of shipping the Equipment to

EXHIBIT 2

Lessee's premises and ii) at the end of the Lease Term, of shipping the Equipment back to Lessor's premises.

**7.  DEFAULTS:** If Lessee fails to perform or fulfill any obligation under this Agreement, Lessee shall be in default of this Agreement. Subject to any statute, ordinance or law to the contrary, Lessee shall have seven (7) days from the date of notice of default by Lessor to cure the default. In the event Lessee does not cure a default, Lessor may at Lessor's option (a) cure such default and the cost of such action may be added to Lessee's financial obligations under this Agreement; or (b) declare Lessee in default of the Agreement. If Lessee shall become insolvent, cease to do business as a going concern or if a petition has been filed by or against Lessee under the Bankruptcy Act or similar federal or state statute, Lessor may immediately declare Lessee in default of this Agreement. In the event of default, Lessor may, as permitted by law, re-take possession of the Equipment. Lessor may, at its option, hold Lessee liable for any difference between the Rent that would have been payable under this Agreement during the balance of the unexpired term and any rent paid by any successive lessee if the Equipment is re-let minus the cost and expenses of such reletting. In the event Lessor is unable to re-let the Equipment during any remaining term of this Agreement, after default by Lessee, Lessor may at its option hold Lessee liable for the balance of the unpaid rent under this Agreement if this Agreement had continued in force.

**8.  POSSESSION AND SURRENDER OF EQUIPMENT:** Lessee shall be entitled to possession of the Equipment on the first day of the Lease Term. At the expiration of the Lease Term, Lessee shall surrender the Equipment to Lessor by delivering the Equipment to Lessor or Lessor's agent in good condition and working order, ordinary wear and tear excepted, as it was at the commencement of the Agreement.

**9.  USE OF EQUIPMENT:** Lessee shall only use the Equipment in a careful and proper manner and will comply with all laws, rules, ordinances, statutes and orders regarding the use, maintenance of storage of the Equipment.

**10. CONDITION OF EQUIPMENT AND REPAIR:** Lessee or Lessee's agent has inspected the Equipment and acknowledges that the Equipment is in good and acceptable condition.

**11. MAINTENANCE, DAMAGE AND LOSS:** Lessee will, at Lessee's sole expense, keep and maintain the Equipment clean and in good working order and repair during the Lease Term. In the event the Equipment is lost or damaged beyond repair, Lessee shall pay to Lessor the replacement cost of the Equipment; in addition, the obligations of this Agreement shall continue in full force and effect through the Lease Term.

**12. INSURANCE:** Lessee shall be responsible to maintain insurance on the Equipment with losses payable to Lessor against fire, theft, collision, and other such risks as are appropriate and specified by Lessor. Upon request by Lessor, Lessee shall provide proof of such insurance.

**13. ENCUMBRANCES, TAXES AND OTHER LAWS:** Lessee shall keep the Equipment free and clear of any liens or other encumbrances and shall not permit any act where Lessor's title or rights may be negatively affected. Lessee shall be responsible for complying with and conforming to all laws and regulations relating to the possession, use or maintenance of the Equipment. Furthermore, Lessee shall promptly pay all taxes, fees, licenses and governmental charges, together with any penalties or interest thereon, relating to the possession, use or maintenance of the Equipment.

**14. LESSORS REPRESENTATIONS:** Lessor represents and warrants that he/she has the right to lease the Equipment as provided in this Agreement and that Lessee shall be entitled to quietly hold and possess the Equipment, and Lessor will not interfere with that right as long as Lessee pays the Rent in a timely manner and performs all other obligations under this Agreement.

**15. OWNERSHIP:** The Equipment is and shall remain the exclusive property of Lessor.

**16. SEVERABILITY:** If any part or parts of this Agreement shall be held unenforceable for any reason, the remainder of this Agreement shall continue in full force and effect. If any provision of this Agreement is deemed invalid or unenforceable by any court of competent jurisdiction, and if limiting such provision would make the provision valid, then such provision shall be deemed to be construed as so limited.

**17. ASSIGNMENT:** Neither this Agreement nor Lessee's rights hereunder are assignable except with Lessor's prior, written consent.

**18. BINDING EFFECT:** The covenants and conditions contained in the Agreement shall apply to and bind the Parties and the heirs, legal representatives, successors and permitted assigns of the Parties.

**19. GOVERNING LAW:** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

**20. NOTICE:** Any notice required or otherwise given pursuant to this Agreement shall be in writing and mailed certified return receipt requested, postage prepaid, or delivered by overnight delivery service to:

Lessor:                                              Lessee:

Service One, LLC                          Trash Chomper, LLC
4801 Keller Springs Rd                   4801 Keller Springs Rd.
Addison, TX  75001                        Addison, TX 75001


Either party may change such addresses from time to time by providing notice as set forth above.

**21. ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the Parties and supersedes any prior understanding or representation of any kind preceding the date of this Agreement. There are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Agreement. This Agreement may be modified in writing and must be signed by both Lessor and Lessee.

**22. CUMULATIVE RIGHTS:** Lessor's and Lessee's rights under this Agreement are cumulative and shall not be construed as exclusive of each other unless otherwise required by law.

**23. WAIVER:** The failure of either party to enforce any provisions of this Agreement shall not be deemed a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Agreement. The acceptance of rent by Lessor does not waive Lessor's right to enforce any provisions of this Agreement.

**24. INDEMNIFICATION:** Except for damages, claims or losses due to Lessor's acts or negligence, Lessee, to the extent permitted by law, will indemnify and hold Lessor and Lessor's property, free and harmless from any liability for losses, claims, injury to or death of any person, including Lessee, or for damage to property arising from Lessee using and possessing the Equipment or from the acts or omissions of any person or persons, including Lessee, using or possessing the Equipment with Lessee's express or implied consent.

**25. ADDITIONAL TERMS & CONDITIONS** (Specify "none" if there are no additional provisions)

None
_____
_____
_____
_____
_____
_____
_____
_____

**[Remainder of Page Intentionally Left Blank]**

Equipment Lease Agreement                    EXHIBIT 2                                  4

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed the day and year first above written.

**LESSOR:**

11/6/2020

Sandra Perry
(Name)

(Position, if applicable)

**LESSEE:**

11/6/2020

Charles Tomasello
(Name)

(Position, if applicable)

11/6/2020

Service One  Lease Payment #2

# Loan Amortization Schedule

## Enter Values

| | |
|---|---|
| Loan amount | $35,507.33 |
| Annual interest rate | 12.00% |
| Loan period in years | 4 |
| Number of payments per year | 12 |
| Start date of loan | 11/1/2020 |

Optional extra payments

## Loan Summary

| | |
|---|---|
| Scheduled payment | $935.04 |
| Scheduled number of payments | 48 |
| Actual number of payments | 48 |
| Total early payments | $0.00 |
| Total interest | $9,374.79 |

Lender name: Sandra Perry

| Payment Number | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 11/1/2020 | $35,507.33 | $935.04 | $0.00 | $935.04 | $579.97 | $355.07 | $34,927.36 | $355.07 |
| 2 | 12/1/2020 | $34,927.36 | $935.04 | $0.00 | $935.04 | $585.77 | $349.27 | $34,341.59 | $704.35 |
| 3 | 1/1/2021 | $34,341.59 | $935.04 | $0.00 | $935.04 | $591.62 | $343.42 | $33,749.96 | $1,047.76 |
| 4 | 2/1/2021 | $33,749.96 | $935.04 | $0.00 | $935.04 | $597.54 | $337.50 | $33,152.42 | $1,385.26 |
| 5 | 3/1/2021 | $33,152.42 | $935.04 | $0.00 | $935.04 | $603.52 | $331.52 | $32,548.90 | $1,716.79 |
| 6 | 4/1/2021 | $32,548.90 | $935.04 | $0.00 | $935.04 | $609.56 | $325.49 | $31,939.34 | $2,042.28 |
| 7 | 5/1/2021 | $31,939.34 | $935.04 | $0.00 | $935.04 | $615.65 | $319.39 | $31,323.69 | $2,361.67 |
| 8 | 6/1/2021 | $31,323.69 | $935.04 | $0.00 | $935.04 | $621.81 | $313.24 | $30,701.88 | $2,674.91 |
| 9 | 7/1/2021 | $30,701.88 | $935.04 | $0.00 | $935.04 | $628.03 | $307.02 | $30,073.86 | $2,981.92 |
| 10 | 8/1/2021 | $30,073.86 | $935.04 | $0.00 | $935.04 | $634.31 | $300.74 | $29,439.55 | $3,282.66 |
| 11 | 9/1/2021 | $29,439.55 | $935.04 | $0.00 | $935.04 | $640.65 | $294.40 | $28,798.90 | $3,577.06 |
| 12 | 10/1/2021 | $28,798.90 | $935.04 | $0.00 | $935.04 | $647.06 | $287.99 | $28,151.85 | $3,865.05 |
| 13 | 11/1/2021 | $28,151.85 | $935.04 | $0.00 | $935.04 | $653.53 | $281.52 | $27,498.32 | $4,146.57 |
| 14 | 12/1/2021 | $27,498.32 | $935.04 | $0.00 | $935.04 | $660.06 | $274.98 | $26,838.26 | $4,421.55 |
| 15 | 1/1/2022 | $26,838.26 | $935.04 | $0.00 | $935.04 | $666.66 | $268.38 | $26,171.60 | $4,689.93 |
| 16 | 2/1/2022 | $26,171.60 | $935.04 | $0.00 | $935.04 | $673.33 | $261.72 | $25,498.27 | $4,951.65 |
| 17 | 3/1/2022 | $25,498.27 | $935.04 | $0.00 | $935.04 | $680.06 | $254.98 | $24,818.21 | $5,206.63 |
| 18 | 4/1/2022 | $24,818.21 | $935.04 | $0.00 | $935.04 | $686.86 | $248.18 | $24,131.35 | $5,454.81 |
| 19 | 5/1/2022 | $24,131.35 | $935.04 | $0.00 | $935.04 | $693.73 | $241.31 | $23,437.62 | $5,696.13 |
| 20 | 6/1/2022 | $23,437.62 | $935.04 | $0.00 | $935.04 | $700.67 | $234.38 | $22,736.95 | $5,930.50 |
| 21 | 7/1/2022 | $22,736.95 | $935.04 | $0.00 | $935.04 | $707.67 | $227.37 | $22,029.27 | $6,157.87 |
| 22 | 8/1/2022 | $22,029.27 | $935.04 | $0.00 | $935.04 | $714.75 | $220.29 | $21,314.52 | $6,378.16 |
| 23 | 9/1/2022 | $21,314.52 | $935.04 | $0.00 | $935.04 | $721.90 | $213.15 | $20,592.62 | $6,591.31 |
| 24 | 10/1/2022 | $20,592.62 | $935.04 | $0.00 | $935.04 | $729.12 | $205.93 | $19,863.51 | $6,797.24 |
| 25 | 11/1/2022 | $19,863.51 | $935.04 | $0.00 | $935.04 | $736.41 | $198.64 | $19,127.10 | $6,995.87 |
| 26 | 12/1/2022 | $19,127.10 | $935.04 | $0.00 | $935.04 | $743.77 | $191.27 | $18,383.32 | $7,187.14 |
| 27 | 1/1/2023 | $18,383.32 | $935.04 | $0.00 | $935.04 | $751.21 | $183.83 | $17,632.11 | $7,370.98 |
| 28 | 2/1/2023 | $17,632.11 | $935.04 | $0.00 | $935.04 | $758.72 | $176.32 | $16,873.39 | $7,547.30 |
| 29 | 3/1/2023 | $16,873.39 | $935.04 | $0.00 | $935.04 | $766.31 | $168.73 | $16,107.08 | $7,716.03 |

EXHIBIT 2

| Payment Number | Payment Date | Beginning Balance | Scheduled Payment | Extra Payment | Total Payment | Principal | Interest | Ending Balance | Cumulative Interest |
|---|---|---|---|---|---|---|---|---|---|
| 30 | 4/1/2023 | $16,107.08 | $935.04 | $0.00 | $935.04 | $773.97 | $161.07 | $15,333.11 | $7,877.10 |
| 31 | 5/1/2023 | $15,333.11 | $935.04 | $0.00 | $935.04 | $781.71 | $153.33 | $14,551.39 | $8,030.43 |
| 32 | 6/1/2023 | $14,551.39 | $935.04 | $0.00 | $935.04 | $789.53 | $145.51 | $13,761.86 | $8,175.95 |
| 33 | 7/1/2023 | $13,761.86 | $935.04 | $0.00 | $935.04 | $797.43 | $137.62 | $12,964.44 | $8,313.56 |
| 34 | 8/1/2023 | $12,964.44 | $935.04 | $0.00 | $935.04 | $805.40 | $129.64 | $12,159.04 | $8,443.21 |
| 35 | 9/1/2023 | $12,159.04 | $935.04 | $0.00 | $935.04 | $813.45 | $121.59 | $11,345.58 | $8,564.80 |
| 36 | 10/1/2023 | $11,345.58 | $935.04 | $0.00 | $935.04 | $821.59 | $113.46 | $10,523.99 | $8,678.26 |
| 37 | 11/1/2023 | $10,523.99 | $935.04 | $0.00 | $935.04 | $829.80 | $105.24 | $9,694.19 | $8,783.50 |
| 38 | 12/1/2023 | $9,694.19 | $935.04 | $0.00 | $935.04 | $838.10 | $96.94 | $8,856.09 | $8,880.44 |
| 39 | 1/1/2024 | $8,856.09 | $935.04 | $0.00 | $935.04 | $846.48 | $88.56 | $8,009.60 | $8,969.00 |
| 40 | 2/1/2024 | $8,009.60 | $935.04 | $0.00 | $935.04 | $854.95 | $80.10 | $7,154.66 | $9,049.09 |
| 41 | 3/1/2024 | $7,154.66 | $935.04 | $0.00 | $935.04 | $863.50 | $71.55 | $6,291.16 | $9,120.64 |
| 42 | 4/1/2024 | $6,291.16 | $935.04 | $0.00 | $935.04 | $872.13 | $62.91 | $5,419.03 | $9,183.55 |
| 43 | 5/1/2024 | $5,419.03 | $935.04 | $0.00 | $935.04 | $880.85 | $54.19 | $4,538.17 | $9,237.74 |
| 44 | 6/1/2024 | $4,538.17 | $935.04 | $0.00 | $935.04 | $889.66 | $45.38 | $3,648.51 | $9,283.12 |
| 45 | 7/1/2024 | $3,648.51 | $935.04 | $0.00 | $935.04 | $898.56 | $36.49 | $2,749.95 | $9,319.61 |
| 46 | 8/1/2024 | $2,749.95 | $935.04 | $0.00 | $935.04 | $907.54 | $27.50 | $1,842.41 | $9,347.11 |
| 47 | 9/1/2024 | $1,842.41 | $935.04 | $0.00 | $935.04 | $916.62 | $18.42 | $925.79 | $9,365.53 |
| 48 | 10/1/2024 | $925.79 | $925.79 | $0.00 | $925.79 | $916.53 | $9.26 | $0.00 | $9,374.79 |

EXHIBIT 2

# NationWide Trailers,LLC

### Buyers Order

*JACOB GRANHOLD*

2850 E Loop 820 S

Ft. Worth,TX 76119

Phone (817) 457-3535  Fax (817) 457-3545

DATE:

EMAIL: -

Ship To:  pick up

Bill To:

| SALESPERSON | P.O. NUMBER | ORDER NO | SHIP DATE | F.O.B. POINT | TERMS |
|---|---|---|---|---|---|
| Lester | | | | | |

| QUANTITY | DESCRIPTION | UNIT PRICE | AMOUNT |
|---|---|---|---|
| | Make-PJ Trailers | | |
| | **UPGRADES IN BOLD PRINT** | | |
| 1.00 | 14' Rollster Gooseneck Trailer | $9,800.00 | $9,800.00 |
| | 2-7,000lb Axles with elec Brakes | incl | |
| | 16" Wheels w/235/80R16 Radial Tires | incl | |
| | 17,500lb Winch w/Dual Batteries | incl | |
| | Front Tool Box | incl | |
| | 6 Leaf Slipper Spring Suspension | incl | |
| | 3" Inframe Greaseable Rollers | incl | |
| | Electric Breakaway Kit w/ Charger | incl | |
| | 45° Dump Pitch | incl | |
| | 12VDC Hydraulic Pump | incl | |
| | 5" x 21" Hydraulic Cylinder w/Scissor Lift | incl | |
| | 12' Control Cable | incl | |
| | 6" Channel Main Frame | incl | |
| | DOT Approved Flushmount Lifetime LED Lights | incl | |
| | Sealed Bargman Wire Harness w/ 7-Way RV Plug | incl | |
| | Sand Blasted, Acid Washed, Powder Coated | incl | |
| | G.V.W.R 15,680lbs | | |
| 6.00 | 14' 14yd Dumpsters (6 GREEN) (Sales Tax INCL) | $3,788.75 | $22,732.50 |
| | Butterfly Style Tarp System Installed (SALES TAX INCL) | $1,299.00 | $1,299.00 |
| 5 | 14 PLY TIRE UPGRADE (SALES TAX INCL) | $124.48 | $622.40 |

Buyer_____

Seller_____

| | |
|---|---|
| SUBTOTAL | $34,354.90 |
| Parts | |
| Trailer Tax 6.25% | 612.5 |
| Title | 36.75 |
| Doc | 110 |
| Registration | 122.5 |
| Temp Tag | 5 |

EXHIBIT 2

| | |
|---|---|
| State Inspection | 7.5 |
| TOTAL | $35,249.15 |
| Downpayment | |
| Remaining Balance | 35,249.15 |

PRICES QUOTED .

Please make all checks payable to NationWide Trailers.

THANK YOU FOR YOUR BUSINESS!
ALL DEPOSITS ON SPECIAL ORDERS ARE NON REFUNDABLE

EXHIBIT 2

# EXHIBIT 3



**HAYWARD**
P L L C

10501 N. CENTRAL EXPRESSWAY
SUITE 106   DALLAS, TX 75231
972.755.7100 (MAIN/FAX)
WWW.HAYWARDFIRM.COM

*JAMES S. BROUNER*
972.755.7107 (DIRECT)
JBROUNER@HAYWARDFIRM.COM

July 26, 2022

<u>UNITED STATES MAIL, POSTAGE PREPAID AND</u>
<u>CERTIFIED MAIL, RETURN RECEIPT REQUESTED</u>

Trash Chomper, LLC                                          **#7015 1730 0000 7301 6641**
c/o Sandra Perry
12 Cowboys Way #1512
Frisco, TX 75034

Trash Chomper, LLC                                          **#7015 1730 0000 7301 6672**
c/o Sandra Perry
9201 Warren Pkwy., Ste 200
Frisco, TX 75035

Trash Chomper, LLC                                          **#7015 1730 0000 7301 6689**
c/o Peter Nicklas
1550 S Ballard Ave
Wylie, TX 75098-4800

Trash Chomper, LLC                                          **#7015 1730 0000 7301 6696**
c/o Charles Tomasello
5830 Granite Pkwy., Ste 100
Plano, TX 75024

Re:   (1) Equipment Lease Agreement dated August 12, 2020, between Service One, LLC, as Lessor, and Trash Chomper, LLC, as Lessee (the "<u>August Lease</u>"); and

(2) Equipment Lease Agreement dated November 1, 2020, between Service One, LLC, as Lessor, and Trash Chomper, LLC, as Lessee (the "<u>November Lease</u>")

Dear Ms. Perry and Messrs. Nicklas and Tomasello,

As you know, this firm represents Mark A. Weisbart (the "<u>Trustee</u>"), the duly appointed and acting SubV chapter 11 trustee of the bankruptcy estate of Service One, LLC.

**HAYWARD**
P L L C

EXHIBIT 3



As you are also aware in 2020 Service One, LLC ("SOLLC") and Trash Chomper, LLC ("TCLLC") entered the two equipment leases referenced above. Pursuant to the August Lease SOLLC, as lessor, leased to TCLLC, as lessee, three (3) 14-yard dumpsters and one (1) goose neck hauler (the "August Leased Equipment") for the period September 1, 2002, through July 1, 2022 (the "August Lease Term"). Pursuant to the November Lease SOLLC, as lessor, leased to TCLLC, as lessee, six (6) 14-yard dumpsters and one (1) goose neck hauler (the "November Leased Equipment") for the period October 1, 2002, through October 21, 2024 (the "November Lease Term"). The August Lease and November Lease together shall hereinafter be referred to as the "Leases."

In exchange for the rental and use of the August Leased Equipment and November Leased Equipment TCLLC agreed to pay SOLLC a monthly rental fee of $1,082.69 (the "August Lease Rent") and $934.04 (the "November Lease Rent") respectively.

In addition, under both Leases TCLCC agreed (i) to surrender and deliver to SOLLC the August Leased Equipment and November Leased Equipment upon expiration of the respective Leases, (ii) to maintain insurance on the equipment the subject of the respective Leases with SOLLC as the loss payee, and (iii) that the August Leased Equipment and November Leased Equipment would "remain the exclusive property of [SOLLC]."

The August Lease Term expired on July 1, 2022. Thus, the Trustee hereby demands that TCLLC surrender and deliver the August Leased Equipment no later than seven (7) days from the date hereof. You may contact the undersigned for instructions for such surrender.

Further, SOLLC's records reflect that TCLLC is in payment default of both Leases as it has not made a payment of the August Lease Rent or the November Lease Rent since August 2021 (the "Payment Defaults"). In addition, upon information and belief, TCLLC has failed to maintain insurance on the August Leased Equipment and the November Leased Equipment (the "Insurance Obligation"). Accordingly, the Trustee hereby Trustee hereby provides notice of TCLLC's default under the August Lease (to the extent TCLLC contends such lease has not expired) and the November Lease for its Payment Defaults and failure to maintain its Insurance Obligation under the respective Leases (together the "Lease Defaults"). Absent TCLLC's cure of the Lease Defaults within seven (7) days of the date of this letter, the Trustee shall declare the August Lease (to the extent not already expired) and the November Lease in default and exercise all rights and remedies available to SOLLC's bankruptcy estate.

In the event TCLLC intends to cure the Lease Defaults, proof of insurance and all cure payments should be made payable to Service One, LLC and sent or delivered to the following address:

> Mark A. Weisbart, Trustee
> Attn: Service One, LLC
> 10501 N. Central Expressway, Suite 106
> Dallas, TX 75231

Case 22-04045    Doc 5-1    Filed 08/23/22    Entered 08/23/22 11:22:14    Desc Exhibit
Declaration    Page 32 of 35

Trash Chomper, LLC
July 26, 2022
Page **3** of **3**

HAYWARD
PLLC

Should you have any questions or would like to discuss this matter you may contact me at (972) 755-7107.

Sincerely,

James S. Brouner

cc:  Mark A. Weisbart (via email)
      Jeff Carruth (via email)
      Patrick Schurr (via email)

# EXHIBIT 4



Writer's Email Address:                                                  Writer's Direct Dial No.:
patrick.schurr@solidcounsel.com                                                 214.472.2136

August 2, 2022

James S. Brouner, Esq.            VIA EMAIL JBROUNER@HAYWARDFIRM.COM
HAYWARD PLLC
10501 N. Central Expressway
Suite 106
Dallas, Texas 75231

RE:    (1)  Equipment Lease Agreement dated august 12, 2022 by and between
       Service One, LLC as Lessor and Trash Chomper LLC as Lessee (the "August
       Lease"); and (2) Equipment Lease Agreement dated November 1, 2020 by
       and between Service One, LLC as Lessor and Trash Chomper LLC as Lessee
       (the "November Lease"); our file no. 18460.105

Mr. Brouner:

       As you know, the undersigned represents Trash Chomper LLC and Mr. Charles
Tomasello as president of Trash Chomper LLC and this letter is written for and on their
respective behalves.

       Mr. Tomasello has requested that I respond to your demand letter of July 26, 2022
regarding the August and November Leases (collectively, the "Leases") and advise you
that neither Mr. Tomasello nor Trash Chomper LLC oppose your demand for the return
of the dumpsters and haulers subject to the Leases (the "Equipment"), and would extend
their full cooperation to you in the recovery of said Equipment, however, Mr. Tomasello
is without access to the business records of Trash Chomper LLC or the software that
allows for tracking of the dumpsters (aka "Box Tracker") as said information and access
are retained by Ms. Perry and Mr. Nicklas despite Mr. Tomasello being the president of
Trash Chomper LLC.

       As to the other defaults referenced in your July 26, 2022 letter, I will address same
in the order as they appear in your letter.  Mr. Tomasello is aware of two accounts at
PlainsCapital Bank ending in 3004 and 9901 (the "Frozen Accounts") which have been
frozen as a result of the interpleader action filed by PlainsCapital Bank in the lawsuit
styled *PlainsCapital Bank v. Charles Tomasello, Sandra  Perry, Glass FX LLC; Trash Chomper
LLC; Hernandez Multi-Contracting Services LLC; Poppy Place Homes LLC and 7 Sky Roofing*

EXHIBIT 4

James S. Brouner, Esq.
August 2, 2022
Page 2

*LLC*, in the 134th District Court for Dallas County, Cause No. DC-22-04549 (the "State Court Lawsuit") on April 29, 2022. Since early April 2022 when the "new" accounts were opened by Ms. Perry and Mr. Nicklas at PlainsCapital Bank, Mr. Tomasello has been kept in the dark by Ms. Perry and Mr. Nicklas regarding the existence of any other bank accounts of Trash Chomper LLC again despite Mr. Tomasello being the only authorized officer of Trash Chomper LLC to open bank accounts. Mr. Tomasello is aware of several customers of Trash Chomper LLC during this period paying for services rendered by Trash Chomper LLC by credit card but said credit card payments have not deposited into the Frozen Accounts. Efforts to obtain access to the new bank accounts and their location have been refused by Ms. Perry's counsel. Without any access to the existing bank accounts or the Frozen Accounts, Mr. Tomasello is without the ability to honor your demand to cure the Payment Defaults.

As to the Insurance Obligation, the insurance for the Equipment was cancelled by the insurer for (a) nonpayment; and (b) multiple claims including one claim involving Mr. Nicklas' use of one of the vehicles titled in the name of Trash Chomper LLC for his personal use. In early June 2022, Mr. Tomasello requested Mr. Nicklas to obtain new insurance on the Equipment, however, Mr. Nicklas has refused to provide Mr. Tomasello with any proof of any new insurance for the Equipment so once again we cannot address the Insurance Obligation as Mr. Tomasello has been provided no information regarding whereabouts of the Equipment or whether same are insured despite requesting same.

If you should have any questions, please do not hesitate to contact me either via telephone or email.

Sincerely,

/s/ Patrick J. Schurr

PJS

c:    Jeff Carruth          VIA EMAIL
      Charles Tomasello     VIA EMAIL
      Mark Weisbart         VIA EMAIL

n:\pschurr\tomasello\trash chomper\2022.08.02 response brouner demand.docx

EXHIBIT 4