IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>SERVICE ONE, LLC<br><br>                                   Debtor | CASE NO. 22-40503<br>CHAPTER 11<br>(Subchapter V) |
| MARK A. WEISBART, SUBV CHAPTER 11 TRUSTEE OF SERVICE ONE, LLC<br><br>                                   PLAINTIFF<br>V.<br><br>TRASH CHOMPER, LLC<br><br>                                   DEFENDANT | Adversary No. 22-04045 |

## DECLARATION OF MARK A. WEISBART

I, Mark. A. Weisbart, declare as follows:

1. "I am over eighteen (18) years of age and if called upon I would competently testify to the matters set forth herein from my own personal knowledge.

2. I am the duly appointed and acting SubV Chapter 11 trustee for the bankruptcy estate of Service One, LLC. In that capacity I have personal knowledge of the facts stated herein.

3. This Declaration is being submitted in support of *Request for Emergency Hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* filed herein seeking an emergency hearing on Plaintiff's *Motion for Temporary Restraining Order and Preliminary Injunction* (the "TRO Motion")

4. On April 21, 2022 (the "Petition Date"), a voluntary petition under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") was filed on behalf of Service One, LLC (the

DECLARATION OF MARK A. WEISBART – Page 1

"Debtor") commencing the above-referenced bankruptcy case (the "Bankruptcy Case").[1] Per its designation on its Petition, the Debtor is proceeding under Subchapter V of Chapter 11 in accordance with section 1182 of the Bankruptcy Code (the "SubV Designation").

5. Thereafter, I was appointed the Subchapter V Chapter 11 Trustee for this case pursuant to section 1183 of the Bankruptcy Code.

6. Due to disputes between the Debtor's two members, Sandra Perry and Charles Tomasello, each of whom own a 50% membership interest in the Debtor, on April 25, 2022, the Debtor filed its *Motion to Remove the Debtor from Possession and Authorize Subchapter V Trustee to Operate the Business of the Debtor* (the "Removal Motion") seeking to be removed as a debtor in possession pursuant to section 1185 of the Bankruptcy Code and requesting that the Trustee be authorized to manage and operate the Debtor's business pursuant to section 1183(b)(5).

7. By Order entered on April 29, 2022, the Court granted the Removal Motion and vested me with authority to operate the Debtor's business and manage its assets in accordance with 11 U.S.C. § 1183(b)(5).

8. On May 18, 2022, Schedules A/B, D, E/F, G and H [Doc 77] (the "Schedules) and a Statement of Financial Affairs [Doc 78] ("SOFA") were filed on behalf of the Debtor.[2]

9. The Debtor was formed in October 2018. Perry was its original sole member and Charles A. Tomasello ("Tomasello") its manager. Through an Amended and Restated Company Agreement of Service One, LLC dated April 1, 2019, Tomasello was named an equal member and Perry was appointed co-manager.

---

[1] The voluntary petition included a copy of the Debtor's "U.S. Income Tax Return for an S Corporation for 2020," Form 1120-S (the "2020 Return").

[2] The Declarations filed with the Schedules and SOFA were signed by Perry as the Debtor's managing member.

**DECLARATION OF MARK A. WEISBART** – Page 2

10. The Debtor's principal business has been the remodeling and renovation of single-family homes for clients operating in the "single family rental space."

11. The Debtor's bankruptcy was precipitated by a fallout between Perry and Tomasello which culminated in a state court lawsuit and the freezing of the Debtor's bank account by PlainsCapital Bank.

12. In addition to their association in the Debtor, Perry and Tomasello hold interests in and jointly manage other businesses, including TCLLC which was formed in August 2020. Upon information and belief, after its formation Peter Nicklas ("Nicklas") was subsequently added as a member in and manager of TCLLC. TCLLC operates a trash bin rental and waste removal business primarily focused in the residential construction sector.

13. From August 2020 through mid-April 2022 the Debtor paid or advanced funds for many of TCLLC's operational expenses, including, without limitation, salaries, insurance, software, hired services and telephone, internet and communications charges. Also, during this period the Debtor periodically transferred funds into TCLLC's bank account (and certain TCLLC debts and expenses were paid by preauthorized debits from the Debtor's bank account. Further, for most of this period, if not all, TCLLC's business operated from the Debtor's principal office.

14. As TCLLC initially lacked sufficient and adequate funds and capital to acquire equipment to commence its operations, in August and November 2020 the Debtor purchased the Equipment – being nine (9) 14-yard dumpsters and two (2) goose neck hauler various trash bins, from Nationwide Trailers FTW. The Debtor, in turn, leased the Equipment to TCLLC for use in its business operations. These lease arrangements were documented and are evidenced by two equipment leases (the "Leases"); the first being that certain Equipment Lease Agreement dated

August 12, 2020 (the "August Lease"),[3] under which the Debtor, as lessor, leased to TCLLC, as lessee, three (3) 14-yard dumpsters and one (1) goose neck hauler (the "August Equipment") for the period September 1, 2002, through July 1, 2022, and the second being that certain Equipment Lease Agreement dated November 1, 2020 (the "November Lease"),[4] under which the Debtor, as lessor, leased to TCLLC, as lessee, six (6) 14-yard dumpsters and One (1) goose neck hauler (the "November Equipment") for the period October 1, 2002, through October 21, 2024.[5]

15. In consideration for the rental and use of the August Equipment and November Equipment TCLLC agreed under the Leases, *inter alia*, to pay the Debtor, respectively, monthly rental amounts of $1,082.69 and $934.04 (the "Rent"). Under the Leases TCLLC also agreed to (i) surrender and deliver to the Debtor the August Equipment upon expiration of the Leases' respective terms,[6] and (ii) maintain insurance on the Equipment with Debtor as the loss payee.[7] In addition, Leases expressly provided that "[t]he] Equipment is and shall remain the exclusive property of [the Debtor]."[8]

---

[3] A true and correct copy of the August Lease is attached as **Exhibit "1,"** to my declaration filed in support of the TRO Motion and is incorporated herein.

[4] A true and correct copy of the November Lease is attached hereto as **Exhibit "2,"** to my declaration filed in support of the TRO Motion and is incorporated herein.

[5] Both the August Lease and the November Lease were executed by Perry on behalf of the Debtor and by Tomasello on behalf of TCLLC.

[6] *See* Exhibits 1 and 2, ¶ 8 ("**POSSESSION AND SURRENDER OF EQUIPMENT:** [ ] At the expiration of the Lease Term, Lessee shall surrender the Equipment to Lessor by delivering the Equipment to Lessor or Lessor's agent in good condition and working order, ordinary wear and tear excepted, as it was at the commencement of the Agreement.

[7] *See* Exhibits 1 and 2, ¶ 12 ("**INSURANCE:** Lessee shall be responsible to maintain on the Equipment with losses payable to Lessor against fire, theft, collision, and other risks as are appropriate and specified by Lessor.")

[8] *See* Exhibits 1 and 2, ¶ 15 ("**OWNERSHIP:** The Equipment is and shall remain the exclusive property of Lessor.")

<u>DECLARATION OF MARK A. WEISBART</u> – Page  4

16. Other than the difference in the monthly rental fee and the term periods the Leases contains the same substantive terms and provisions.

17. TCLLC is in default under the Leases, having failed to (1) pay the Debtor Rent due under both Leases since August 2021, (2) continually maintain insurance on the Equipment, and (3) surrender and deliver the August Equipment to the Debtor since the expiration of the August Lease.

18. The Debtor failed to list the Equipment on its Schedule A/B, and, when questioned at the scheduled Section 341 Meeting of Creditors on May 20, 2022, Perry testified that the Debtor did not own any dumpsters and haulers. Nevertheless, the Equipment constitutes property of the Debtor's estate pursuant to 541(a) of the Bankruptcy Code. The Debtor purchased the Equipment and TCLLC agreed pursuant to the Leases that the Equipment was and would remain the property of the Debtor.[9]

19. On or around June 13, 2022, I received information that the Debtor owned the Equipment. As the Equipment was not scheduled, on June 14, 2022, I made a request to Debtor's counsel for an explanation about the ownership of the Equipment and provided him copies of the Leases for his review.

20. In response, I received late on June 14, 2022, an email from Perry claiming that the Equipment was owned by TCLLC and the subject of her liens.[10] No other information or documents supporting Perry's assertions, however, were provided.

21. Despite subsequent requests to Perry's counsel, as of the filing of the Complaint in this proceeding, neither Perry or her counsel had provided me or my counsel any document or

---

[9] In addition, the Equipment is identified as assets of the Debtor on schedules to the 2020 Return.

[10] Schedule D of the Schedules does not reflect Perry as a secured creditor of the Debtor.

**DECLARATION OF MARK A. WEISBART** – Page 5

information substantiating her claim that the Equipment is owned by TCLLC or that they are subject to liens for her benefit.

22. On July 26, 2022, my counsel delivered to Perry, Tomasello, Nicklas, along with Perry's and Tomasello's counsel, a demand letter (the "Demand Letter") demanding TCLLC's return of the August Leased Equipment and declaring a default under both Leases for TCLLC's failure to pay Rent and to maintain the requisite insurance on the Equipment (the "Lease Defaults").[11] As the Leases required, TCLLC was provided seven (7) days from the date of Demand Letter for TCLLC to surrender the August Leased Equipment and to cure the identified Lease Defaults.

23. On August 2, 2022, my office received a response to the Demand Letter from Tomasello's counsel stating that (i) TCLLC and Tomasello did not oppose the demand for return of the Equipment, (ii) Tomasello was aware that customers of TCLLC have continued to pay TCLLC for services but due to his lack of access to TCLLC's frozen bank accounts he does not have ability to cure the identified "Payment Defaults," and (iii) that insurance for the Equipment had been cancelled and that despite Tomasello's request for proof of new insurance, Niklas had refused to provide him any such proof.[12]

24. As of the filing of the Complaint herein there had been no response from Perry or her counsel to the Demand Letter.

25. As of the Petition Date, the Debtor owned and held title to the Equipment.

---

[11] A true and correct copy of the Demand Letter is attached hereto as **Exhibit "3,"** to my declaration filed in support of the TRO Motion and incorporated herein.

[12] A true and correct copy of Tomasello's response is attached hereto as **Exhibit "4,"** to my declaration filed in support of the TRO Motion and incorporated herein.

**DECLARATION OF MARK A. WEISBART** – Page  6

26. The Equipment constitutes property of the Debtor's bankruptcy estate pursuant to Section 541(a) of the Bankruptcy Code. As such, pursuant to Section 363(b) of the Bankruptcy Code the Equipment represents property of the Debtor's bankruptcy estate that I, as trustee, may use.

27. The Equipment is in the possession and control of TCLLC. Pursuant to the August Lease, upon its expiration, TCLLC was obligated to deliver and surrender the August Leased Equipment to the Debtor. TCLLC is in default of this obligation.

28. Despite expiration of the August Lease and demand by Plaintiff to TCLLC's managers, TCLLC has continued to withhold the August Leased Equipment from Plaintiff and refuses to deliver and surrender same to Plaintiff.

29. Further, based on the Leased Defaults TCLLC is in default of both Leases and both Leases have terminated. Thus, TCLLC has no right or interest in or to the Equipment.

30. TCLLC has exercised control over the Equipment to the exclusion of the Debtor's bankruptcy estate.

31. Through this exercise of control over the Equipment, TCLLC has willfully and intentionally violated the automatic stay of Section 362(a)(3) of the Bankruptcy Code.

32. TCLLC continues to use the Equipment in its business operations. In continuing to use the Equipment, TCLLC is generating additional revenue and income for its business.

33. TCLLC's use of the Equipment creates significant harm and risk to the Debtor's bankruptcy estate as the estate is unable to maximize the Equipment's value for the benefit of its creditors and such use poses substantial risk of liability in the event of an injury in the use or transportation of the Equipment.

34. Absent immediate injunctive relief, the Debtor's bankruptcy estate will suffer immediate and irreparable harm and injury given TCLLC's continued use of the Equipment in its business operations and its failure to maintain insurance to cover damage to the Equipment and protect against any injuries or damages arising from its use.

35. The issuance of a temporary restraining order is necessary to preserve the *status quo* pending the Court's consideration of Plaintiff's request for entry of a preliminary injunction.

36. The issuance of a temporary restraining order is necessary to prevent immediate and irreparable injury to the Debtor's bankruptcy estate. This harm to the estate is imminent as TCLLC and the TLLC Agents presently possess, control and maintain custody of the Equipment and TCLLC continues to use and operate the Equipment in its business operations. TCLLC's use of the Equipment creates a substantial, immediate and irreparable threat of a loss to the Debtor's bankruptcy estate. TCLLC's continued use of Equipment diminishes the value of the Equipment, creates a risk of liability for the Debtor's estate and threatens the ability of Plaintiff to maximize the Equipment's value for the benefit of the Debtor's creditors.

37. In the event of an accident involving the Equipment the Debtor's bankruptcy estate will suffer a property loss, i.e., the value of and future use of the Equipment, and potential liability for any injury or harm to third parties and their property.

38. Any damage or destruction of the Equipment would diminish or eliminate any value Plaintiff could recognize in its sale. Further, there is a substantial and real threat that demand for the Equipment is waning. As well documented, the home construction sector is experiencing a slow-down and nearing a recession due to the rise of mortgage rates, a decrease in buying activity and home starts. This slowdown has further caused a pull-back in residential restoration and renovation projects.

39. Further, in having unfettered use, possession and control of the Equipment, TCLLC has the ability to operated, sell, alter, transfer or otherwise dispose of the Equipment to the detriment of the Debtor's bankruptcy estate. Any sale, transfer, alteration or disposition could be made for the purpose of converting property of the bankruptcy estate or circumventing any judgment eventually obtained by Plaintiff, thereby diminishing the value of such property for the benefit of the estate's creditors.

40. The bankruptcy estate would suffer irreparable injury and harm in the event of sale, transfer, alteration or disposition of the Equipment.

41. The injury and harm faced by the bankruptcy estate in the event injunctive relief is not granted is (i) the diminished value of the Equipment, (ii) reduced market for sale of the Equipment, and (iii) potential liability for injury or damages caused to third parties.

42. On the other hand, TCLLC and the TCLLC's Agents have little risk of injury or damage if enjoined from using, operating, utilizing, selling, transporting, transferring, altering or destroying the Equipment. Since the August Lease expired and the Leases have been terminated, TCLLC has no legal right to possess or use the Equipment. Consequently, TCLLC cannot rely on the use of the Equipment in its business operation, nor does it have a reasonable expectation of any such rights.

43. There is a substantial likelihood that the Debtor's bankruptcy estate will succeed on the merits of this action. TCLLC's sole basis for possession, custody and control of the Equipment arises under the Leases. The August Lease expired under its terms and due to the Lease Defaults TCLLC's the Leases have terminated. Upon termination of the Leases TCLLC is obligated to return and surrender the Equipment. As the Equipment constitutes property of the bankruptcy estate, TCLLC is obligated to turnover possession, custody and control of that property

to Plaintiff pursuant to 11 U.S. C. § 542(a).   These circumstances, in addition to the other facts alleged herein, clearly evidence Plaintiff's likelihood of success on the merits of the complaint.

44.   The issuance of a temporary restraining order would not adversely affect public policy or the public interest, but rather granting this relief would serve to enhance the public interest and public policy.   First, it will protect the Debtor's bankruptcy estate from a substantial and irreparable injury to the Equipment or third parties who might seek recovery against the estate in the event of an accident. Second, it will protect and preserve the bankruptcy estate's rights and interest in the Equipment in accordance with Section 363 of the Bankruptcy Code.   Third, it would preserve the integrity of the Bankruptcy Code and bankruptcy process by preserving the value of estate property and further the expeditious administration of the bankruptcy estate. Fourth, it would enhance enforcement of the automatic stay of Section 362(a) to ensure no party exercises control or possession of estate property.   Finally, it preserves the important public policy that the bankruptcy trustee is the sole representative of the bankruptcy estate and that no third party has the authority, right, standing or power to assert control over property of the estate.

45.   The Debtor's bankruptcy estate does not have an adequate remedy at law.   While the bankruptcy estate could obtain a judgment against TCLLC any such judgment would likely remain unsatisfied and uncollectible.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 23rd day of August 2022.

_____
Mark A. Weisbart

**DECLARATION OF MARK A. WEISBART** – Page  10